IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ESTRELLA TENORIO,

    Plaintiff,

v.                                                                                1:15-cv-00349-LF-WPL

SAN MIGUEL COUNTY DETENTION CENTER,
BOARD OF COMMISSIONERS OF SAN
MIGUEL COUNTY, WARDEN PATRICK
SNEDEKER, in his Individual and official
capacities, ANTONIO PADILLA, ELFIGO
SANDOVAL, JOEY ROMERO, and MATHEW
BORREGO, in their individual capacities,
HEALTH CARE PARTNERS FOUNDATION,
INC., and RITA TORRES,

    Defendants.

## ORDER

THIS MATTER comes before the Court on defendant San Miguel County Detention Center's (SMCDC) Motion to Dismiss (Doc. 63); defendants SMCDC, Board of Commissioners of San Miguel County, Warden Patrick Snedeker, and Antonio Padilla's (collectively "County Defendants") Motion to Dismiss Plaintiff's Spoliation Claim (Doc. 64); County Defendants' Motion to Dismiss Plaintiff's Complaint, in Part, Based on Qualified Immunity (Doc. 65); defendants Elfigo Sandoval, Joey Romero, and Mathew Borrego's (collectively Detention Officer Defendants) Motion for Partial Dismissal of Plaintiff's Claims (Doc. 73); defendants Rita Torres and Health Care Partners, Inc.'s (collectively HCP Defendants) Motion to Dismiss, or in the Alternative, Motion for Definite Statement (Doc. 93); and plaintiff Estrella Tenorio's Motion to Amend/Correct Complaint (Doc. 99). For the following reasons, the Court grants SMCDC's Motion to Dismiss, and grants in part and denies in part Ms. Tenorio's Motion to Amend/Correct Complaint. The remaining motions to dismiss are denied as moot, and may be refiled to the

extent that they still pertain to Ms. Tenorio's amended complaint.

## I. Background

This case arises out of an incident that occurred in May, 2013. The background facts are taken from the allegations in Ms. Tenorio's original complaint, which the Court assumes are true for the purposes of the pending motions. In April 2013, defendants Healthcare Partners, Inc. and Torres hired Ms. Tenorio as a medical technician and assigned her to work at SMCDC under the direction and supervision of SMCDC, Warden Snedeker, and other supervisory staff employed by defendants San Miguel County and SMCDC. Doc. 1 ¶ 23. Tenorio alleges that she was an employee of both SMCDC and Healthcare Partners, Inc. as that term is defined in the New Mexico Human Rights Act, N.M. STAT. ANN. §§ 28-1-1 *et seq*., and the United States Equal Employment Opportunity Act, and that both SMCDC and Healthcare Partners, Inc. supervised, controlled, and directed Ms. Tenorio's day-to-day work assignments as a medical technician at SMCDC. *Id.* ¶¶ 24–25.

At approximately 9:00 p.m. on May 11 or 12, 2013, Ms. Tenorio was getting ready to leave SMDC after finishing her shift. *Id.* ¶¶ 31–32. Before leaving, she walked into the master control room to deliver some paperwork to Officers Borrego and Romero. *Id.* ¶ 33. After entering the control room, Officers Borrego and Romero forcibly placed Ms. Tenorio in handcuffs and cuffed her to a chair. *Id.* ¶ 34. After a while, Officers Borrego and Romero removed the cuffs, but then immediately attempted to handcuff Ms. Tenorio again. *Id.* ¶ 35. Ms. Tenorio struggled, and during the course of the struggle Officers Borrego and Romero injured Ms. Tenorio, causing bruising, swelling and pain to her wrists and arms. *Id.* ¶ 36. Officers Borrego and Romero succeeded in forcibly handcuffing Ms. Tenorio again, and they cuffed her to a toilet in the master control room. *Id.* ¶ 37. After some time, the officers again freed her, but

then attempted to handcuff her again. *Id.* ¶ 38. At some point, Officer Sandoval and another officer entered the master control room, and Officer Sandoval joined in the struggle. *Id.* ¶ 41. Officer Sandoval succeeded in placing Ms. Tenorio in handcuffs, and Officers Sandoval, Borrego and Romero again cuffed her to a chair. *Id.* ¶ 38. At one point while Ms. Tenorio was cuffed to the chair, she attempted to escape by scooting herself and the chair through the door into the hallway. *Id.* ¶ 40. Officer Borrego, Romero, or Sandoval forcibly pulled her back into the master control room. *Id.* ¶ 42. After several cuffings and struggles, Officers Borrego, Romero, and Sandoval finally set Ms. Tenorio free, and she left SMCDC. *Id.* ¶ 46.

By scooting into the hallway, Ms. Tenorio was not only attempting to escape but also was hoping she would be seen on the video surveillance cameras that panned that area. *Id.* ¶ 43. San Miguel County's internal investigative report states that Officer Sandoval claimed "that as he walked in [to the hallway] he saw Medical Tenorio cuffed to a chair and asked her to go back into master control and asked Officer Borrego to uncuff her." *Id.* ¶ 44. But SMCDC officials, including Warden Snedeker, now claim that there is no video recording of Ms. Tenorio in the hallway. *Id.* ¶ 45.

The incident was brought to the attention of Ms. Torres and Warden Snedeker, and a supervisor or supervisors questioned Ms. Tenorio about the incident on June 6, 2013. *Id.* ¶ 47. After learning of the incident, defendants San Miguel County, SMCDC, Warden Snedeker, and Healthcare Partners, Inc. retaliated against Ms. Tenorio for her testimony concerning the incident and engaged in a coordinated effort to blame her for what happened. *Id.* ¶¶ 49–50. Before the incident was reported, Healthcare Partners, Inc. regularly scheduled Ms. Tenorio to work at SMCDC, which was close to her residence. *Id.* ¶ 51. About one month after the incident was reported, Ms. Tenorio learned that she no longer would be scheduled to work at SMCDC. *Id.* ¶

3

52. Healthcare Partners, Inc., and Ms. Torres informed Ms. Tenorio that she would be assigned to work in a facility in Trinidad, Colorado, which was a two-hour drive from Ms. Tenorio's home in Las Vegas, New Mexico. *Id.* ¶¶ 53–54.

Ms. Tenorio attempted to get copies of documents related to the incident and the reporting of the incident, but Warden Snedeker and Ms. Torres refused to provide her copies of the documents she requested. *Id.* ¶ 55. Ms. Tenorio also became aware that SMCDC personnel were engaging in disparaging communications about her, attacking her character and blaming her for what happened. *Id.* ¶ 57. Ms. Tenorio's working relationship with SMCDC and Healthcare Partners, Inc. became intolerable. *Id.* ¶ 56. Given Ms. Torres's and Warden Snedeker's treatment of her, the lengthy commute to Trinidad, and the general ongoing discrimination and harassment, Ms. Tenorio had no choice but to leave her employment at SMCDC and Healthcare Partners, Inc. *Id.* ¶ 58. Ms. Tenorio was constructively terminated from SMCDC and Healthcare Partners, Inc. on July 22, 2013. *Id.* ¶ 59.

Ms. Tenorio filed a charge with the EEOC for discrimination and retaliation based on sex on March 4, 2014. *Id.* ¶ 61. The EEOC thereafter issued a notice of right to sue. *Id.* ¶ 62.

Ms. Tenorio filed her original complaint in this Court on April 27, 2015. Doc. 1. She alleged seven causes of action against all defendants: constructive discharge, violations of the New Mexico Human Rights Act, violations of the New Mexico Tort Claims Act ("NMTCA"), spoliation of evidence, Title VII violations under 42 U.S.C. § 2000e *et seq.* ("Title VII"), civil rights violations under 42 U.S.C. § 1983, and conspiracy to interfere with civil rights under 42 U.S.C. § 1985. *See* Doc. 1. On February 2, 2016, the County Defendants filed three motions to dismiss. Docs. 63, 64, 65. On February 11, 2016, the Detention Officer Defendants filed their motion to dismiss. Doc. 73. The HCP Defendants filed their motion to dismiss on April 14,

2016.  Doc. 93.  Ms. Tenorio filed her responses to the first four motions to dismiss on April 25, 2016, along with her motion to amend and correct her complaint.  Docs. 95–99.  She filed her response to the HCP Defendants' motion on May 25, 2016.  Doc. 111.  Meanwhile, each group of defendants filed their responses to Ms. Tenorio's motion to amend on various dates in May.  Docs. 103, 106, 107.  All the motions were completely briefed by June 16, 2016.  *See* Docs. 105, 115, 117, 119, 121, 124.

For efficiency purposes, I will address the motion to amend first.

### II.  Motion to Amend

Rule 15 governs amendments to pleadings.  *See* Fed. R. Civ. P. 15.  "Except when an amendment is pleaded 'as a matter of course,' as defined by the rule, 'a party may amend its pleading only with the opposing party's written consent or the court's leave.'"  *Bylin v. Billings*, 568 F.3d 1224, 1229 (10th Cir. 2009).  Courts "should freely grant leave when justice so requires."  *Id.*; FED. R. CIV. P. 15(a)(2).  Rule 15(a)(2)'s purpose "is to provide litigants the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties."  *Minter v. Prime Equip.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (internal quotations omitted).  Therefore, "[r]efusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment."  *Frank v. U.S. West, Inc.*, 3 F.3d 1357, 1365 (10th Cir.1993); *accord Foman v. Davis*, 371 U.S. 178, 182 (1962).  When considering whether to allow a plaintiff to amend his or her complaint pursuant to Rule 15(a)(2), the Tenth Circuit has noted that "[w]here the party seeking amendment knows or should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint, the motion to amend is subject to denial." *Las Vegas Ice and*

5

*Cold Storage Co. v. Far West Bank*, 893 F.2d 1182, 1185 (10th Cir. 1990).

Whether to grant leave to amend a complaint pursuant to Rule 15(a) is within the trial court's broad discretion. *See Minter*, 451 F.3d at 1204 (citing *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1971)); *see also Calderon v. Kan. Dep't of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1187 (10th Cir.1999). The court of appeals will not reverse a lower court's decision to permit an amendment unless the decision was "arbitrary, capricious, whimsical, or manifestly unreasonable." *Bylin*, 536 F.3d at 1229.

A plaintiff seeking to amend her complaint after the scheduling order deadline for doing so has passed must establish good cause for doing so. *Gorsuch, Ltd., B.C. v. Wells Fargo Nat. Bank Ass'n*, 771 F.3d 1230, 1241 (10th Cir. 2014). This requirement stems from Rule 16 of the Federal Rules of Civil Procedure, which provides that a scheduling order "may be modified only for good cause and with the judge's consent." FED. R. CIV. P. 16(b)(4). The good cause standard requires the moving party to show that the scheduling deadlines could not be met despite the moving party's diligent efforts. *Gorsuch, Ltd., B.C.*, 771 F.3d at 1240. Rule 16(b)'s "good cause" standard is arguably more stringent then Rule 15(a)'s undue delay standard, and focuses instead "on the diligence of the party seeking leave to modify the scheduling order to permit the proposed amendment." *Colorado Visionary Academy v. Medtronic, Inc.*, 194 F.R.D. 684, 687 (D. Colo. 2000).

Here, the Court will not apply the Rule 16(b) standard. The scheduling order in this case did not set a deadline for the parties to amend their pleadings because they did not anticipate any amendments. *See* Doc.41 at 2, Doc. 44. Therefore, the Court will analyze the motion to amend only under the more lenient standard of Federal Rule of Civil Procedure 15(a).

A. <u>Undue Delay</u>

Ms. Tenorio filed her motion to amend/correct her complaint nearly a year after she filed her original complaint. However, the deadline for completing discovery had not passed, and discovery was stayed pursuant to a motion filed on February 4, 2016. *See* Docs. 44, 89. In addition, Ms. Tenorio's proposed amendment adds at least one allegation of fact that did not occur until October 2015. *See* Docs. 99-1 ¶ 35; 111-1 ¶ 35. Finally, Ms. Tenorio sought to amend her complaint in conjunction with her responses to four motions to dismiss, all of which sought dismissal of some claims and/or defendants under FED. R. CIV. P. 12(b)(6), *see* Docs. 63, 64, 65, 73, and in response to the HCP defendants' motion to dismiss, or, in the alternative, for a more definite statement, *see* Docs. 99, 111. Ms. Tenorio acknowledges that her proposed amended complaint is intended to address various issues raised in the defendants' motions. *See* Docs. 111, 112 at 2, 113 at 3, 120 at 2. Because Ms. Tenorio sought to amend her complaint for the first time promptly after receiving the defendants' motions to dismiss, and because discovery has been stayed and is still in the early stages, Ms. Tenorio's delay in seeking the amendment is not excessive.

B. <u>Undue Prejudice</u>

None of the defendants allege that they would suffer undue prejudice if Ms. Tenorio were permitted to amend her complaint. *See* Docs. 103, 106, 107. Indeed, given the procedural posture of the case and the fact that the first amended complaint does not add any new claims, I find that no defendant will suffer undue prejudice as a result of the proposed amendment.

C. <u>Bad Faith</u>

The County Defendants argue that the timing of Ms. Tenorio's motion to amend —while all defendants have pending dispositive motions—indicates bad faith. Doc. 107 at 4–5. The

7

Tenth Circuit Court of Appeals has not explicitly held that bad faith may be inferred when a plaintiff seeks to amend her complaint in response to a Rule 12(b) motion. *See Ludwikoski & Associates, Inc. v. Yeti Coolers, LLC*, No. 2:13-CV-2649-EFM-GLR, 2014 WL 3767684, at *5 (D. Kan. July 31, 2014). "The movant's bad faith must be apparent from evidence in the record." *Steinert v. The Winn Grp., Inc.*, 190 F.R.D. 680, 684–85 (D. Kan. 2000) (citing *Foman v. Davis*, 371 U.S. 178, 182, (1962); *Koch v. Koch Indus.*, 127 F.R.D. 206, 211 (D. Kan. 1989)). Bad faith could include "some indication of an intentional advancement of a baseless contention that is made for an ulterior purpose, *e.g.*, harassment or delay." *Ford v. Temple Hosp.*, 790 F.2d 342, 347 (3d Cir. 1986). Defendants offer no evidence that plaintiff seeks to amend her complaint for some ulterior purpose. The Court is not convinced that Ms. Tenorio is trying to do anything other than clarify what she is alleging against each defendant.[1]

D. Futility

All the defendants raise futility arguments in response to Ms. Tenorio's motion to amend her complaint, but they do not all address the revised first amended complaint that is attached to Ms. Tenorio's response to the HCP Defendants' motion to dismiss, Docs. 111-1, 111-2. *See* Docs. 103, 106, 107. Because the defendants have not specifically addressed their futility arguments to the proposed first amended complaint that the Court intends to permit, I find that it is more efficient to permit the amendment unless it is obviously futile.

---

[1] The County Defendant's reliance on *Allen v. Menninger Clinic, Inc.*, No. CIV.A. 98-2373-GTV, 1999 WL 381560, at *2 (D. Kan. May 25, 1999) is misplaced. In that case the court did not conclude that "plaintiff's attempt to tailor her complaint around the pending motion to dismiss amounts to bad faith." *Id.* Rather, the court found plaintiff's motion to amend untimely and unduly prejudicial to defendants. *Id.*

Permitting Ms. Tenorio to amend her claims against SMCDC pursuant to 42 U.S.C. §§ 1983 and 1985 would be obviously futile because SMCDC is not a suable entity under those statues. Although municipalities and local governments are "persons" who may be sued under § 1983, *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978), "[g]enerally, governmental sub-units are not separate suable entities that may be sued under § 1983." *Hinton v. Dennis*, 362 F. App'x 904, 907 (10th Cir. 2010) (citing *Martinez v. Winner,* 771 F.2d 424, 444 (10th Cir. 1985) (City of Denver Police Department was not a separate suable entity)); *see also Ketchum v. Albuquerque Police Dept.*, 958 F.2d 381 (Table), 1992 WL 51481, *3–*4 (10th Cir. Mar. 12, 1992) (unpublished) (although municipalities could be held liable under § 1983, municipal police departments and the Bernalillo County Detention Center lacked legal identities apart from the municipality and were not suable entities under § 1983).

The law of the state in which the district court sits governs the capacity of a governmental entity to sue or be sued. *See* FED. R. CIV. P. 17(b). Under New Mexico law, counties are granted the same powers as municipalities, and therefore may sue and be sued. *See* N.M. STAT. ANN. 1978, §§ 3-18-1(A), 4-37-1. Suits against a New Mexico county should be brought against "the board of county commissioners of the county of [the appropriate county]." N.M. STAT. ANN. 1978 § 4-46-1. Although San Miguel County is a suable entity that is subject to liability under §§ 1983 and 1985, San Miguel County Detention Center—a subdivision of the County (Doc. 1 ¶ 2)—has no legal identity apart from the county and is not a suable entity under those sections. *See Ketchum*, 1992 WL 51481, at *3; *Apodaca v. New Mexico Adult Probation and Parole*, 998 F. Supp. 2d 1160, 1190 (D.N.M. 2014); *White v. Utah*, 5 F. App'x 852, 853 (10th Cir. 2001) (upholding dismissal of suit against county jail because there was "no statutory or case authority supporting a direct action against a county's subdivisions, including its jails"); *Aston v.*

9

*Cunningham*, 216 F.3d 1086 (Table), 2000 WL 796086, *4 n.3 (10th Cir. Jun. 21, 2000) ("Dismissal against this entity [the Salt Lake County jail] was also required because a detention facility is not a person or legally created entity capable of being sued.").

Ms. Tenorio may, therefore, sue the San Miguel County Board of Commissioners for alleged violations of §§ 1983 and 1985, but cannot sue the San Miguel County Detention Center under these sections. Accordingly, the Court will not permit Ms. Tenorio to amend her complaint to the extent it includes § 1983 and § 1985 claims against SMCDC.

The law with respect to Ms. Tenorio's other claims against SMCDC is not as straightforward as SMCDC suggests. As the New Mexico Court of Appeals has recognized, "New Mexico's law is confusing and inconsistent regarding which [governmental] entity can be sued and when." *Abalos v. Bernalillo Cty. Dist. Atty's Office*, 1987-NMCA-026, ¶ 20, 105 N.M. 554, 559, 734 P.2d 794, 799  Under the New Mexico Tort Claims Act (NMTCA), a plaintiff may sue a public employee as well as "the agency or entity for whom the public employee works." *Id.* ¶ 18, 105 N.M. 554, 559, 734 P.2d 794, 799. To name a particular public entity under the NMTCA requires "(1) a negligent public employee who meets one of the waiver exceptions under [New Mexico Statutes Annotated] Sections 41-4-5 to -12; and (2) an entity that has immediate supervisory responsibilities over the employee." *Id.* ¶ 23, 105 N.M. 554, 559, 734 P.2d 794, 799. The "immediate supervisory entity of the public employee involved" is the entity that should be named in the suit. *Id.* Indeed, a plaintiff need not name a specific employee of the offending agency as a defendant to sue an agency under the NMTCA. *Lopez, Sr. v. Las Cruces Police Dep't*, 2006-NMCA-074, ¶ 15–16, 139 N.M. 730, 736, 137 P.3d 670, 676 ("*Abalos* does not require both the employee and the entity to be named; it merely clarifies that both can be sued.").

In Ms. Tenorio's proposed amended complaint, she alleges that defendants Borrego, Romero, Sandoval, Padilla, and Snedeker are law enforcement officers who meet the waiver exception under § 41-4-12,[2] and are public employees who meet the waiver exception under § 41-4-6. Doc. 111-1 ¶¶ 4–5, 89–90. She also alleges that these defendants were employed by SMCDC, were negligent in the operation or maintenance of SMCDC, and that they injured her by committing many of the acts for which they may be held liable under § 41-4-12. *Id.* ¶¶ 4–5, 93. And, according to the proposed amended complaint, both San Miguel County and SMCDC had immediate supervisory authority over the negligent employee-defendants. *Id.* ¶ 95. Accordingly, SMCDC is a suable entity as authorized by the NMTCA. Ms. Tenorio's proposed amendment on this claim is not futile, and the Court will grant her motion to amend her NMTCA claim against SMCDC and will deny SMCDC's motion to dismiss the NMTCA claim.

The parties do not specifically discuss New Mexico law with respect to whether SMCDC is a suable entity under the New Mexico Human Rights Act or Title VII, or whether it can be sued for constructive discharge or spoliation of evidence. *See* Docs. 63, 94, 95, 118; *see also Wooten v. Kansas City Bd. of Pub. Utilities for City of Kansas City, KS*, No. 03-2138-JWL, 2003 WL 22389280, at *1 (D. Kan. Oct. 15, 2003) (unpublished) (whether public utility board is an "employer" under Title VII does not demonstrate that it has the legal capacity to sue and be sued under Rule 17(b); court granted motion to dismiss board based on ordinance that clearly established it did not have the capacity to be sued). SMCDC relies on § 1983 cases, and Ms. Tenorio relies on the NMTCA line of cases, but neither party specifically discusses the other causes of action and whether SMCDC has the capacity to be sued on those claims. Because New

---

[2] The proposed amended complaint actually refers to N.M. STAT. ANN. § 41-4-13, *see* Doc. 111-1 ¶ 89, but that is an obvious typographical error as it is § 41-4-12 that applies to liability of law enforcement officers, not § 41-4-13.

Mexico law is confusing on this issue, and because the Court could not find clear authority one way or the other, the Court will permit Ms. Tenorio to amend her complaint with respect to her constructive discharge claim, her claim under the New Mexico Human Rights Act, her spoliation of evidence claim, and her Title VII claim.  Should SMCDC wish to file another motion to dismiss these claims, it may do so, but it should discuss the law with respect to the specific causes of action alleged against SMCDC.

To the extent that the other defendants have viable grounds for dismissing some or all of the claims raised in Ms. Tenorio's first amended complaint, those arguments are more efficiently raised in the context of new Rule 12(b)(6) motions that address the operative complaint, rather than indirectly under Rule 15(a).  *See General Steel Domestic Sales, LLC v. Steelwise, LLC*, 2008 WL 2520423, *4 (D. Colo. June 20, 2008) ("Rather than force a Rule 12(b)(6) motion into a Rule 15(a) opposition brief, the defendants may be better served by waiting to assert Rule 12 motions until the operative complaint is in place.").  The Court consequently will deny the remaining defendants' motions to dismiss as moot.  *See, e.g., Terracon Consultants, Inc. v. Drash*, No. 12-2345-EFM, 2013 WL 1633510, *2 (D. Kan. Apr. 16, 2013) ("Because the motion to amend is granted, defendant's pending motion to dismiss [] is moot."); *Gotfredson v. Larsen LP*, 432 F. Supp. 2d 1163, 1172 (D. Colo. 2006) ("Defendants' motions to dismiss are technically moot because they are directed at a pleading that is no longer operative.").

IT IS THEREFORE ORDERED that plaintiff Estrella Tenorio's Motion for Leave to Amend her Complaint (Doc. 99) is granted in part and denied in part.  Ms. Tenorio's motion to amend her complaint with respect to claims against the San Miguel County Detention Center under 42 U.S.C. §§ 1983 and 1985 is denied because that amendment would be futile.  In all other respects, her motion to amend is granted.  Ms. Tenorio will file her first amended

complaint, attached as an exhibit to Document 111, on or before [ONE WEEK FROM ORDER], 2016.

IT IS FURTHER ORDERED that defendant San Miguel County Detention Center's Motion to Dismiss (Doc. 63) is granted in part and denied in part. Ms. Tenorio's claims against this defendant under 42 U.S.C. §§ 1983 and 1985 are dismissed with prejudice.

IT IS FURTHER ORDERED that the County Defendants' Motion to Dismiss Plaintiff's Spoliation Claim (Doc. 64) is denied as moot; the County Defendants' Motion to Dismiss Plaintiff's Complaint, in Part, Based on Qualified Immunity (Doc. 65) is denied as moot; the Detention Officer Defendants' Motion for Partial Dismissal of Plaintiff's Claims (Doc. 73) is denied as moot; the HCP Defendants' Motion to Dismiss, or in the Alternative, Motion for Definite Statement (Doc. 93) is denied as moot.

_____
Laura Fashing
United States Magistrate Judge