IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ESTRELLA TENORIO,

      Plaintiff,

v.                                                                              1:15-cv-00349-LF-WPL

SAN MIGUEL COUNTY DETENTION CENTER,
BOARD OF COMMISSIONERS OF SAN
MIGUEL COUNTY, WARDEN PATRICK
SNEDEKER, in his Individual and official
capacities, ANTONIO PADILLA, ELFIGO
SANDOVAL, JOEY ROMERO, and MATHEW
BORREGO, in their individual capacities,
HEALTH CARE PARTNERS FOUNDATION,
INC., and RITA TORRES, in her individual and
official capacities,

      Defendants.

## **MEMORANDUM OPINION AND ORDER**

THIS MATTER comes before the Court on defendants Elfigo Sandoval, Joey Romero
and Mathew Borrego's (collectively "Detention Officer Defendants") Motion for Dismissal of
Seventh Cause of Action (Doc. 133), and defendants San Miguel County Detention Center
("SMCDC"), Board of Commissioners of San Miguel County, Warden Patrick Snedeker, and
Antonio Padilla's (collectively "County Defendants") Motion to Dismiss Plaintiff's First
Amended Complaint, in Part, Based on Qualified Immunity (Doc. 140).  For the following
reasons, the Court GRANTS the Detention Officer Defendants' and the County Defendants'
motions to dismiss the seventh cause of action, but it otherwise DENIES the County Defendants'
motion to dismiss the first, second, fifth, and sixth causes of action.

## I.  **Relevant Facts**

This case arises out of an incident that occurred in May, 2013.  The facts are taken from the allegations in Ms. Tenorio's first amended complaint, which the Court assumes are true for the purposes of the pending motions.  In April 2013, defendant Health Care Partners Foundation, Inc. (hereafter "Health Care Partners') and defendant Rita Torres hired Ms. Tenorio as a medical technician and assigned her to work at SMCDC under the direction and supervision of SMCDC, Warden Snedeker, and other supervisory staff employed by defendants San Miguel County and SMCDC.  Doc. 128 ¶ 23.  Ms. Tenorio alleges that she was an employee of both SMCDC and Health Care Partners as that term is defined in the New Mexico Human Rights Act, N.M. STAT. ANN. §§ 28-1-1 *et seq*., and the United States Equal Employment Opportunity Act,[1] and that both SMCDC and Health Care Partners supervised, controlled, and directed Ms. Tenorio's day-to-day work assignments as a medical technician at SMCDC.  Doc. 128 ¶¶ 24–25.

A supervisor on-site at SMCDC supervised Ms. Tenorio, set her hours, and controlled her shifts.  *Id.* ¶ 26.  Shifts were set to ensure twenty-four hour coverage by a medical officer at SMCDC.  *Id.*  Health Care Partners determined whether Ms. Tenorio would work at SMCDC or at other locations.  *Id.* ¶ 28.  Another medical officer at SMCDC trained Ms. Tenorio, and her work always was supervised.  *Id.* ¶ 29.  Ms. Tenorio used medical equipment that was kept in a medical office at SMCDC to perform her job.  *Id.* ¶ 31.  She also used computers that were kept on site at SMCDC to complete necessary records and other documentation as part of her duties. *Id.* ¶ 32.  Ms. Tenorio received $10 per hour from "HCP Systems LLC," presumably another name for Health Care Partners, for her work at SMCDC.  *Id.* ¶ 34.  HCP Systems LLC deducted state and federal taxes from her paychecks.  *Id.*  SMCDC was required to have medical

---

[1] 42 U.S.C. §§ 2000e(b), (f) (defining "employer" and "employee").

technicians physically present and on-duty at all times, and Health Care Partners earned revenue by supplying the necessary medical technicians. *Id.* ¶ 37. Ms. Tenorio's job duties as a medical technician at SMCDC were an integral part of SMCDC's and Health Care Partners' businesses. *Id.* ¶ 36. As a medical technician, Ms. Tenorio was required to begin and end her work at SMCDC at specified times. *Id.* ¶ 38.

At approximately 9:00 p.m. on May 11 or 12, 2013, Ms. Tenorio was getting ready to leave SMCDC after finishing her shift. *Id.* ¶¶ 39–40. Before leaving, she walked into the master control room to deliver some paperwork to Officers Borrego and Romero. *Id.* ¶ 41. After entering the control room, Officers Borrego and Romero forcibly placed Ms. Tenorio in handcuffs and cuffed her to a chair. *Id.* ¶ 42. After a while, Officers Borrego and Romero removed the cuffs, but then immediately attempted to handcuff Ms. Tenorio again. *Id.* ¶ 43. Ms. Tenorio struggled, and during the course of the struggle Officers Borrego and Romero injured Ms. Tenorio, causing bruising, swelling and pain to her wrists and arms. *Id.* ¶ 44. Officers Borrego and Romero succeeded in forcibly handcuffing Ms. Tenorio again. *Id.* ¶ 45. At one point, Ms. Tenorio was handcuffed to a toilet in the master control room. *Id.* ¶ 47. After some time, one officer freed her, but then Officers Borrego and Romero attempted to handcuff her again. *Id.* ¶ 48. At some point, Officer Sandoval and another officer entered the master control room, and Officer Sandoval joined in the struggle. *Id.* ¶¶ 46, 48. Officer Sandoval succeeded in placing Ms. Tenorio in handcuffs again, and Officers Sandoval, Borrego and Romero again cuffed her to a chair. *Id.* ¶ 48. While Ms. Tenorio was cuffed to the chair, she attempted to escape by scooting herself and the chair through the door into the hallway. *Id.* ¶ 50. Officer Borrego, Romero, or Sandoval forcibly pulled her back into the master control room. *Id.* ¶ 51.

After several cuffings and struggles, Officers Borrego, Romero, and Sandoval finally set Ms. Tenorio free, and she left SMCDC.  *Id.* ¶ 55.

By scooting into the hallway, Ms. Tenorio not only was attempting to escape but also was hoping she would be seen on the video surveillance cameras that panned that area.  *Id.* ¶ 52.  San Miguel County's internal investigative report states that Officer Sandoval claimed "that as he walked in [to the hallway] he saw Medical Tenorio cuffed to a chair and asked her to go back into master control and asked Officer Borrego to uncuff her."  *Id.* ¶ 53.  But SMCDC officials, including Warden Snedeker, now claim that there is no video recording of Ms. Tenorio in the hallway.  *Id.* ¶ 54.

The incident was brought to the attention of Ms. Torres and Warden Snedeker, and a supervisor or supervisors questioned Ms. Tenorio on June 6, 2013 about the incident.  *Id.* ¶ 56.  Although she was afraid to report what had happened, she did so.  *Id.* ¶ 57.  After learning of the incident, defendants San Miguel County, SMCDC, Warden Snedeker, and Health Care Partners retaliated against Ms. Tenorio for her testimony concerning the incident and engaged in a coordinated effort to blame her for what happened.  *Id.* ¶¶ 58–59.  Before the incident was reported, Health Care Partners regularly scheduled Ms. Tenorio to work at SMCDC, which was close to her residence.  *Id.* ¶ 60.  About one month after the incident was reported, Ms. Tenorio learned that she no longer would be scheduled to work at SMCDC.  *Id.* ¶ 61.  Ms. Torres informed Ms. Tenorio that she would be assigned to "travel" for Health Care Partners, and would work in a facility in Trinidad, Colorado, which was a two-hour drive from Ms. Tenorio's home in Las Vegas, New Mexico.  *Id.* ¶¶ 62–63.

Ms. Tenorio attempted to get copies of documents related to the incident and the reporting of the incident, but Warden Snedeker and Ms. Torres refused to provide her copies of

the documents she requested.  *Id.* ¶ 64.  Ms. Tenorio became aware that SMCDC personnel were engaging in disparaging communications about her, attacking her character, and blaming her for what happened.  *Id.* ¶ 66.  Most of the people with whom she worked at SMCDC began to ignore or shun her.  *Id.*  Warden Snedeker and Officer Padilla investigated the incident and concluded that Ms. Tenorio was complicit in and encouraged the abusive handcuffing and restraint, which partially excused the actions of Officers Borrego, Romero and Sandoval.  *Id.* ¶ 67.  Ms. Tenorio's working relationship with SMCDC and Health Care Partners became intolerable.  *Id.* ¶ 65.  Given Ms. Torres's and Warden Snedeker's treatment of her, the lengthy commute to Trinidad, and the general ongoing discrimination and harassment, Ms. Tenorio had no choice but to leave her employment at SMCDC and Health Care Partners.  *Id.* ¶ 68.  Ms. Tenorio was constructively terminated from SMCDC and Health Care Partners on July 22, 2013.  *Id.* ¶ 69.

On September 25, 2013, Ms. Tenorio, through counsel, sent a preservation letter to Warden Snedeker and SMCDC that specifically requested preservation of "San Miguel County Detention Center Surveillance Footage of May 12, 2013 of the hallway and entrance to the Master Control Room from approximately 6:00 p.m. to midnight."  *Id.* ¶ 74.  SMCDC and Warden Snedeker responded on September 30, 2013 that "[t]here is no surveillance video recording documentation.  Facility recording equipment has a storage preservation capacity of one and a half months (six (6) weeks)."  *Id.* ¶ 75.  Ms. Tenorio believes that Warden Snedeker and Officer Padilla viewed this video during their investigation of the handcuffing of Ms. Tenorio, but that someone either destroyed the video or simply refused to provide it to Ms. Tenorio or her counsel.  *Id.* ¶ 76.  Alternatively, Ms. Tenorio believes that the video is in the defendants' possession but because the preservation letter mistakenly referred to May 12, 2013, and the incident actually occurred on May 11, 2013, defendants responded that video from May

5

12, 2013 did not exist.  *Id.* ¶ 78.  Because the handcuffing incident was reported on or about June 6, 2013—less than four weeks after the incident and well within the preservation capacity of the recording equipment—the defendants should have been on notice that they should preserve the video.  *Id.* ¶ 77.

Ms. Tenorio filed a charge with the EEOC for discrimination and retaliation based on sex on March 4, 2014.  *Id.* ¶ 71.  The EEOC thereafter issued a notice of right to sue.  *Id.* ¶ 72.

## II.  **The First Amended Complaint**

The first cause of action in Ms. Tenorio's first amended complaint alleges that Ms. Torres, Health Care Partners, Warden Snedeker, SMCDC, and San Miguel County constructively discharged Ms. Tenorio from her employment at Health Care Partners and SMCDC.  Doc. 128 ¶¶ 80–83.  In her second cause of action, Ms. Tenorio alleges that the same defendants discriminated against her in violation of the New Mexico Human Rights Act, N.M. STAT. ANN. §§ 28-1-1 *et seq.*  *Id.* ¶¶ 84–87.  In her third cause of action, Ms. Tenorio alleges that Officers Borrego, Romero, Sandoval, Padilla, and Warden Snedeker breached their duty of care toward Ms. Tenorio and caused her injury, and that SMCDC and San Miguel County are vicariously liable for their employees' torts.  *Id.* ¶¶ 88–96.

In her fourth cause of action, Ms. Tenorio alleges that Ms. Torres, Health Care Partners, Warden Snedeker, SMCDC, and San Miguel County intentionally destroyed, failed to preserve, or withheld the surveillance video of part of the handcuffing incident, knowing that the incident potentially would result in a lawsuit.  *Id.* ¶¶ 97–105.  The fifth cause of action alleges that Ms. Torres, Health Care Partners, Warden Snedeker, SMCDC, and San Miguel County discriminated against Ms. Tenorio on the basis of sex, in violation of 42 U.S.C. §§ 2000e *et seq.*  *Id.* ¶¶ 106–09.

The sixth cause of action alleges various violations of 42 U.S.C. § 1983 against all defendants except SMCDC.  *Id.* ¶¶ 110–20.  It alleges that Ms. Torres, Warden Snedeker, and Officer Padilla retaliated against Ms. Tenorio after she provided testimony regarding the handcuffing incident, in violation of Ms. Tenorio's First Amendment rights.  *Id.* ¶¶ 110–12.  It further alleges that these three defendants violated Ms. Tenorio's First Amendment right of access to the courts by destroying or otherwise denying Ms. Tenorio access to the surveillance video of part of the handcuffing incident.  *See id.* ¶ 113.  It also alleges that Officers Borrego, Romero, and Sandoval, violated Ms. Tenorio's Fourth Amendment right to be free from wrongful detention and the excessive use of force.  *See id.* ¶¶ 114–15.  And it alleges that "Defendants" failed to create and inculcate appropriate procedures for supervisors, failed to properly train supervisors, and failed to institute adequate procedures and policies to protect Ms. Tenorio's rights.  *See id.* ¶ 118.

The seventh cause of action alleges that all defendants except SMCDC conspired to violate Ms. Tenorio's civil rights, in violation of 42 U.S.C. § 1985.  *See id.* ¶¶ 121–27.  Specifically, the seventh cause of action alleges that Ms. Torres and Warden Snedeker explicitly communicated about ways to obstruct Ms. Tenorio's efforts to preserve and obtain her personnel file.  *Id.* ¶ 123.  It further alleges that Warden Snedeker and Officer Padilla, and perhaps other individual defendants, were aware of the surveillance video of the handcuffing incident and either destroyed it or have withheld it.  *Id.* ¶ 124.  And it alleges that Officers Borrego, Romero, and Sandoval together violated Ms. Tenorio's right to be free from wrongful detention and excessive use of force, which included pulling her back into the master control room from the hallway to continue their abuse of her.  *Id.* ¶ 125.

### III. Discussion

The County Defendants seek to dismiss Ms. Tenorio's first, second, and fifth causes of action for failure to state a claim because SMCDC was not Ms. Tenorio's employer, and therefore none of the County Defendants can be held responsible for her claims of constructive discharge or discrimination under the New Mexico Human Rights Act and Title VII. *See* Doc. 140 at 1–2, 6–9. They seek to dismiss the sixth cause of action on two grounds. They argue that her First Amendment retaliation claim fails because she is not an employee of the county. *See id.* at 9–10. They also argue that her First Amendment claim that she was denied access to the courts fails because the destruction of the surveillance video did not prevent her from filing suit. *See id.* at 10–11. The County Defendants seek to dismiss Ms. Tenorio's seventh cause of action because there has been no violation of Ms. Tenorio's civil rights, and therefore her claim that there was a conspiracy to violate her civil rights also must fail. *See id.* at 11–12. The Detention Officer Defendants seek to dismiss Ms. Tenorio's seventh cause of action for failure to state a claim under 42 U.S.C. § 1985. *See* Doc. 133.

Ms. Tenorio responds that she has pled sufficient facts to establish that SMCDC was her employer, and therefore the Court should not dismiss her first, second and fifth causes of action against the County Defendants. Doc. 149 at 7–11. She argues that her sixth cause of action is not dependent on whether she was an employee of SMCDC, and therefore that is not a basis for dismissing that claim. *See id.* at 11–13. She also argues that the deprivation of the surveillance video did not need to prevent her from filing a lawsuit in order to be actionable under § 1983, so that aspect of her sixth cause of action should not be dismissed. *See id.* at 13–18. And finally, she argues that she was denied her Fourteenth Amendment due process rights to be free from gender discrimination at the hands of governmental actors, which she says also is actionable

8

under § 1983. *See id.* at 18–19. With regard to the seventh cause of action, Ms. Tenorio argues

that she has pled sufficient facts under § 1983 and § 1985(3) to allege a valid conspiracy claim

against both the County Defendants and the Detention Officer Defendants. *See id.* at 19–21;

Doc. 137 at 4–10. For the following reasons, I grant the motions to dismiss the seventh cause of

action, but I otherwise deny the County Defendants' motion to dismiss the first, second, fifth and

sixth causes of action.

### A.  Motions to Dismiss Generally

"To withstand a motion to dismiss, a complaint must have enough allegations of fact,

taken as true, 'to state a claim to relief that is plausible on its face.'" *Kan. Penn Gaming, LLC v.*

*Collins*, 656 F.3d 1210, 1214 (10th Cir .2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S.

544, 570 (2007)). While "'a court must accept as true all of the allegations contained in a

complaint,'" this rule does not apply to legal conclusions. *Id.* (quoting *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009)). "[A] plaintiff must offer specific factual allegations to support each

claim." *Id.* (citation omitted). A complaint survives only if it "states a plausible claim for

relief." *Id.* (citation omitted).

"Generally, a court considers only the contents of the complaint when ruling on a

12(b)(6) motion." *Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1146 (10th Cir. 2013). In

determining whether to grant the motion, the Court must accept all the well-pleaded allegations

of the complaint as true, even if doubtful in fact, and must construe the allegations in the light

most favorable to the plaintiff. *Twombly*, 550 U.S. at 555; *Alvarado v. KOB–TV, LLC*, 493 F.3d

1210, 1215 (10th Cir. 2007). "[A] well-pleaded complaint may proceed even if it strikes a savvy

judge that actual proof of those facts is improbable, and 'that a recovery is very remote and

unlikely.'" *Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550

U.S. at 556 and *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)).

### B. Ms. Tenorio's Constructive Discharge and Discrimination Claims (First, Second, and Fifth Causes of Action)

The County Defendants argue that Ms. Tenorio's first, second, and fifth causes of action fail because Ms. Tenorio has failed to allege sufficient facts to establish that any of the County Defendants were Ms. Tenorio's employer. Although I agree that Ms. Tenorio is required to plead and ultimately prove that the County Defendants, or at least some of them, were Ms. Tenorio's employer to prevail on these three claims, I do not agree that she has failed to allege sufficient facts to survive a motion to dismiss. Under the joint-employer test, Ms. Tenorio has alleged sufficient facts to make it plausible that both Health Care Partners and the County Defendants, or at least some of them, were Ms. Tenorio's employers.

To state a claim of constructive discharge under New Mexico law, "[a]n employee must allege facts sufficient to find that the *employer* made working conditions so intolerable, when viewed objectively, that a reasonable person would be compelled to resign." *Gormley v. Coca-Cola Enterprises*, 2005-NMSC-003, ¶ 10, 137 N.M. 192, 194–95, 109 P.3d 280, 282–83 (emphasis added). The New Mexico Human Rights Act makes it an unlawful discriminatory practice for "an *employer*, unless based on a bona fide occupational qualification or other statutory prohibition, to refuse to hire, to discharge, to promote or demote or to discriminate in matters of compensation, terms, conditions or privileges of employment against any person otherwise qualified because of . . . sex . . . ." N.M. STAT. ANN. § 28-1-7(A) (emphasis added). An "employer" is "any person employing four or more persons and any person acting for an employer." N.M. STAT. ANN. § 28-1-2(B). Title VII of the Civil Rights Act of 1964 makes it unlawful for an "employer" to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment" on account of sex. 42 U.S.C.

§ 2000e-2(a)(1).  Title VII defines an "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person . . . ." 42 U.S.C. § 2000e(b).  Thus, Ms. Tenorio cannot state a claim for relief under her first, second, or fifth causes of action against the County Defendants unless she alleges sufficient facts to establish that the County Defendants, or at least some of them, were her employer.[2]

To determine "whether a defendant is an employer for purposes of Title VII when doubts exist as to (1) whether a plaintiff is an employ or an independent contractor, or, alternatively, (2) which one(s) of multiple individuals or entities is (are) the plaintiff's employer," the Court must apply one of three different tests, based on the situation.  *Knitter v. Corvias Military Living, LLC*, 758 F.3d 1214, 1225–26 (10th Cir. 2014).  Although the County Defendants urge the Court to apply the "hybrid test," *see* Doc. 140 at 7–9, Doc. 152 at 2–4, the Tenth Circuit has made clear that the "joint-employer test" is the appropriate test to apply in this situation.  In *Bristol v. Board of County Com'rs of County of Clear Creek*, 312 F.3d 1213 (10th Cir. 2002) (*en banc*), the Tenth Circuit clarified that the hybrid test should not be used, as it was in *Lambertson v. Utah Dep't of Corr.*, 79 F.3d 1024 (10th Cir. 1996), to determine which of two entities is a plaintiff's employer. *Bristol*, 312 F.3d at 1218.  Courts should use the hybrid test only to distinguish an employee from an independent contractor.  *Id.*; *see also Knitter v. Corvias Military Living, LLC*, 758 F.3d 1214, 1226 (10th Cir. 2014) ("In our 2002 en banc decision in *Bristol v. Board of County Commissioners*, . . . we clarified that the joint employer test, not the hybrid test, is the

---

[2] Notably, the County Defendants do not address at all whether the test for determining who is an employer under New Mexico law—which would be applicable to the first and second causes of action—is different from federal law.  Ms. Tenorio concedes, however, that although it appears that the New Mexico courts have not addressed the question of whether two independent entities may be held liable as joint employers, New Mexico courts likely would follow federal law on this issue.  *See* Doc. 149 at 7.

appropriate test to use when an employee of one entity seeks to hold another entity liable as an

employer.").  Courts should use the joint-employer test or the single-employer test where the

plaintiff alleges that there is more than one employer.  *Bristol*, 312 F.3d at 1218.  The joint-

employer test applies if the plaintiff is seeking to hold independent entities liable as joint

employers.  *Id.*  The single-employer test applies if the plaintiff asserts that two related entities

effectively constitute a single employer.  *Id.* at 1220; *see also Knitter*, 758 F.3d at 1225–27

(reviewing the three tests and describing the circumstances in which each one is used).

   Here, the County Defendants do not assert that Ms. Tenorio worked as an independent

contractor.  *See generally* Docs. 140, 152.  Instead, they assert that Health Care Partners was Ms.

Tenorio's employer, and they were not.  *See* Doc. 140 at 8–9.  Ms. Tenorio, on the other hand,

alleges that she was an employee of both Health Care Partners and the County Defendants, two

independent entities.  Therefore, the joint-employer test is the appropriate test to apply.  Under

the joint-employer test, two independent entities are considered joint employers if they "share or

co-determine those matters governing the essential terms and conditions of employment."

*Bristol*, 312 F.3d at 1218 (quoting *Virgo v. Riviera Beach Assocs., Ltd.*, 30 F.3d 1350, 1360

(11th Cir. 1994)) (internal quotations omitted).  If both entities "exercise significant control over

the same employees," both entities may be held liable as employers.  *See id.* (internal citations

and quotations omitted).  Whether an entity may terminate the employment relationship may be

the most important factor in determining whether the entity has sufficient control over the terms

and conditions of the employee's employment.  *Knitter*, 758 F.3d at 1228.  Courts also should

consider whether the entity has the ability to "promulgate work rules and assignments, and set

conditions of employment, including compensation, benefits, and hours; day-to-day supervision

of employees, including employee discipline; and control of employee records, including payroll,

insurance, taxes and the like." *Id.*at 1226 (internal citation, quotation marks, and ellipses omitted). Usually the determination of whether an entity is an employer is a factual issue for the jury to decide unless there is no "legally sufficient evidentiary basis for a reasonable jury to find" an employer/employee relationship. *See Bristol*, 312 F.3d at 1221.

Here, Ms. Tenorio has alleged that she worked at SMCDC under the direction and supervision of SMCDC, Warden Snedeker, and other supervisory staff employed by San Miguel County and SMCDC. Doc. 128 ¶ 23. She says that both SMCDC and Health Care Partners supervised, controlled, and directed her day-to-day work assignments at SMCDC. *Id.* ¶ 25. A supervisor on-site at SMCDC supervised Ms. Tenorio, set her hours, and controlled her shifts. *Id.* ¶ 26. Another medical officer at SMCDC trained Ms. Tenorio, and her work always was supervised. *Id.* ¶ 29. Ms. Tenorio used medical equipment stored at SMCDC and computers at SMCDC to complete her work. *Id.* ¶¶ 31–32. SMCDC was required to have a medical technician physically present and on-duty at all times, and shifts were scheduled to ensure that that occurred. *Id.* ¶¶ 26, 37. Ms. Tenorio was required to begin and end her shifts at SMCDC at specified times. *Id.* ¶ 38. Moreover, after the handcuffing incident, Warden Snedeker and Officer Padilla—not Ms. Torres—investigated the incident and determined that Ms. Tenorio was partly to blame, and thereafter Ms. Tenorio no longer was permitted to work at SMCDC. *Id.* ¶¶ 61–62, 67. These allegations are sufficient to establish that the County Defendants, or some of them, exercised significant control over Ms. Tenorio by determining her work schedule, her work assignments, the supervision of her work, discipline, and ultimately, whether she could continue to work at SMCDC. At the pleading stage, Ms. Tenorio's allegations are sufficient. *See Khalik v. United Air Lines*, 671 F.3d 1188, 1191 (10th Cir. 2012) ("[T]he *Twombly*/*Iqbal* standard is a middle ground between heightened fact pleading, which is expressly rejected, and

allowing complaints that are no more than labels and conclusions or a formulaic recitation of the elements of a cause of action, which the Court stated will not do.") (internal quotation omitted).

In their motion, the County Defendants rely entirely on the hybrid test and the *Lambertson* case—both of which the Tenth Circuit specifically held was inapplicable to this situation, *see Bristol*, 312 F.3d at 1218—to argue that they were not Ms. Tenorio's employer. Doc. 140 at 7–9.  In their reply, they argue that the Court should reach the same conclusion under the joint-employer test.  Doc. 152 at 4–6.  The County Defendants rely primarily on the Tenth Circuit's decision in *Knitter* to argue that two factors—an entity's inability to terminate a plaintiff, and the fact that a different entity paid the plaintiff—are determinative.  *See id.* Importantly, all the cases on which the County Defendants rely are cases in which the district court either had granted summary judgment or judgment as a matter of law.  *See Knitter*, 758 F.3d at 1218 (reviewing district court's grant of summary judgment); *Bristol*, 312 F.3d at 1216– 17 (reviewing district court's denial of defendant's motion for judgment as a matter of law); *Lambertson*, 79 F.3d at 1026 (reviewing district court's grant of summary judgment); *Oestman v. Nat'l Farmers Union Ins. Co.*, 958 F.2d 303 (10th Cir. 1992) (reviewing district court's grant of summary judgment).  Thus, the courts in those cases were applying a more stringent standard, not merely determining whether the plaintiff had alleged sufficient facts to make her claim "plausible."

Nevertheless, even if the ability to terminate the employment relationship is the most important factor, Ms. Tenorio's first amended complaint states sufficient facts for the Court to find it plausible that the County Defendants had some control over whether Ms. Tenorio retained her job at SMCDC.  The County Defendants investigated the handcuffing incident, and, after concluding that Ms. Tenorio was at least partially at fault, Ms. Tenorio no longer was permitted

to work at SMCDC.  In addition, although Ms. Tenorio alleges that Health Care Partners paid her, this fact alone does not mean that only Health Care Partners is her employer.  *See Sizova v. Nat. Inst. of Standards & Technology*, 282 F.3d 1320, 1329–30 (10th Cir. 2002) (district court properly granted summary judgment in favor of university based on court's determination that university was not plaintiff's employer even though university paid plaintiff's salary and workers' compensation insurance).  At the pleading stage, Ms. Tenorio has alleged sufficient facts to make a plausible claim that the County Defendants, or some of them, were her employer.  Accordingly, I deny the County Defendants' motion to dismiss Ms. Tenorio's first, second and fifth causes of action.

### C.  Ms. Tenorio's Civil Rights Claim under 42 U.S.C. § 1983 (Sixth Cause of Action)

The County Defendants argue that the Court should dismiss Ms. Tenorio's First and Fourteenth Amendment claims in part because she "was not an employee of County Defendants."  *See* Doc. 140 at 9–10.  They also argue that the Court should dismiss her claim that she was denied her First Amendment right of access to the courts because even if the County Defendants destroyed the surveillance video as she alleges, the destruction of that evidence did not prevent her from filing suit.  *See id.* at 10–11.  In response, Ms. Tenorio argues that the County Defendants make no argument to support their claim that her Fourth Amendment claim is barred by qualified immunity.  Doc. 149 at 12–13.  She also argues that she has pled sufficient facts to support her claim that the County Defendants were her employers, and therefore the Court should not dismiss her First Amendment retaliation and Fourteenth Amendment claims.  *Id.* at 17–19.  She also argues that the fact that she filed suit does not invalidate her First Amendment right of access to the courts.  *Id.* at 13–16.  In their reply, the County Defendants argue that because none of the County Defendants participated in the handcuffing incident, Ms.

15

Tenorio had not alleged a Fourth Amendment claim against them.  Doc. 152 at 10.  Assuming that all the facts stated in Ms. Tenorio's complaint are true, I agree that Ms. Tenorio has alleged sufficient facts to state claims for a violation of her First, Fourth and Fourteenth Amendment rights.

### 1.  *First and Fourteenth Amendment Claims*

To the extent that County Defendants seek to dismiss Ms. Tenorio's First Amendment retaliation claim and Fourteenth Amendment claim because she has failed to allege sufficient facts that they were her employer, my ruling regarding Ms. Tenorio's first, second and fifth causes of action is determinative.  I find that Ms. Tenorio has alleged sufficient facts to establish that the County Defendants, or at least some of them, were her employer.  Therefore, I will deny the County Defendants' motion to dismiss her First Amendment retaliation claim and her claim under the Fourteenth Amendment.

### 2.  *Denial of Access to the Courts Claim*[3]

There are two categories of denial-of-access claims:  "forward looking" and "backward looking."  *Christopher v. Harbury*, 536 U.S. 403, 412–14 (2002).  The essence of a "forward looking" access claim is that "official action is presently denying an opportunity to litigate for a class of potential plaintiffs."  *Id.* at 413.  The goal of this type of denial-of-access suit "is to place the plaintiff in a position to pursue a separate claim for relief once the frustrating condition has

---

[3] Although Ms. Tenorio characterizes her denial-of-access claim as deriving from the First Amendment, the Tenth Circuit has observed that "the precise source of the constitutional right to court access remains ambiguous," although its existence is "quite clear."  *Lynch v. Barrett*, 703 F.3d 1153, 1161 (10th Cir. 2013).  The court previously characterized the right as "one of the privileges and immunities accorded citizens under article 4 of the Constitution and the Fourteenth Amendment," as well as "one aspect of the First Amendment right to petition the government for redress of grievances" and "founded on the due process clause . . . ."  *Id.* (quoting *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990)).

been removed." *Id.* "Backward looking" denial-of-access claims[4] involve "specific cases that cannot now be tried (or tried with all material evidence), no matter what official action may be in the future." *Id.* at 413–14. These types of claims allege that official acts have "caused the loss or inadequate settlement of a meritorious case," or "the loss of an opportunity to sue . . . or . . . to seek some particular order of relief." *Id.* at 414. The object of these types of denial-of-access claims is "simply the judgment in the access claim itself," that is, the remedy that otherwise was lost because of the official act. *See id.*

To state a valid "backward looking" denial-of-access claim, a plaintiff must allege that an official act frustrated the plaintiff's ability to bring a "nonfrivolous" or "arguable" claim and caused the plaintiff to suffer a loss. *See Harbury*, 536 U.S. at 415. The complaint must identify the underlying claim that was frustrated, as well as the remedy. *Id.* The Tenth Circuit has recognized that the "intentional, bad-faith destruction or concealment of evidence that burdens a plaintiff's ability to access the courts" could support an unconstitutional denial of access claim. *Donohue v. Hoey*, 109 F. App'x 340, 357 (10th Cir. 2004) (unpublished).

In her amended complaint, Ms. Tenorio alleges that Warden Snedeker and Officer Padilla reviewed the surveillance video of the handcuffing incident as part of their investigation into what happened. Doc. 128 ¶ 76. She further alleges that they were on notice of the importance of the surveillance video less than four weeks after the incident,[5] but that they nonetheless either destroyed the video or have continued to conceal it from her. *Id.* ¶¶ 74–79. The underlying claims that she says have been frustrated are included in her amended complaint. They include

---

[4] The Supreme Court noted—without deciding the correctness of these decisions—that several courts of appeal had recognized "backward looking" denial-of-access claims. *Harbury*, 536 U.S. at 413–15 & nn. 7, 9.

[5] County Defendants informed Ms. Tenorio that the facility recording equipment only had a storage capacity of six weeks, suggesting that any recording more than six weeks old is automatically overwritten or deleted if not preserved. *See* Doc. 128 ¶ 75.

her third cause of action, for a violation of the New Mexico Tort Claims Act, in which she alleges that Officers Borrego, Romero and Sandoval "assaulted, battered and falsely imprisoned Ms. Tenorio during the handcuffing incident." *Id.* ¶ 92.  According to the complaint, the surveillance video would have shown her in the hallway outside the master control room, handcuffed to a chair, then forcibly pulled back into the control room by Officer Borrego, Romero or Sandoval.  *See id.* ¶¶ 50–52.  The other underlying claim that she says has been frustrated is her Fourth Amendment claim in her sixth cause of action.  There she alleges that the officers who participated in the handcuffing, and any officer in a position to stop the unlawful handcuffing, violated her constitutional right to be free from wrongful detention and the excessive use of force, and the surveillance video would have been material to that claim.  *See id.* ¶¶ 114–15.  Her damages are the same as those that she would have recovered if her claims against the officers had not been compromised.  *See id.* ¶¶ 129–30.  Based on these allegations, Ms. Tenorio has alleged a plausible "backward looking" denial-of-access claim sufficient to withstand a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).

In their motion to dismiss, the County Defendants argue only that because the absence of the video did not prevent Ms. Tenorio from filing suit, there has been no frustration of her claims.  *See* Doc. 140 at 10–11.  This is an oversimplification.  A denial-of-access claim can include the claim that the recovery in the underlying action was inadequate or less than it would have been had the government not destroyed material evidence.  *See Jennings v. City of Stillwater*, 383 F.3d 1199, 1209 (10th Cir. 2004) (plaintiff was required to allege that the settlement of her underlying claim was inadequate because of the government's destruction of evidence to state a valid backward looking denial-of-access claim); *Swekel v. City of River Rouge*, 119 F.3d 1259, 1262 (6th Cir. 1997) ("Access to courts does not only protect one's right

to physically enter the courthouse halls, but also insures that the access to courts will be 'adequate, effective and meaningful.'" (quoting *Bounds v. Smith*, 430 U.S. 817, 822 (1977)). Thus, although it remains to be seen whether Ms. Tenorio's tort and § 1983 claims have been compromised by the County Defendants' alleged destruction of the surveillance video, she has alleged sufficient facts to survive a motion to dismiss.  Moreover, her denial-of-access claim is properly brought in the same action as her underlying claims.  *See Lynch v. Barrett*, 703 F.3d 1153, 1157 n.1 (10th Cir. 2013) ("Where a plaintiff prior to filing an underlying claim knows of facts suggesting an evidentiary cover-up by government officials, the underlying claim and the denial-of-access claim generally should be joined in the same action even if that requires bifurcated trials.").

In their reply, the County Defendants argue for the first time that "there is absolutely no case law in effect in May 2013 that clearly established the contours of this right based on the allegations in the First Amended Complaint."  Doc. 152 at 9.  "As a general rule, the Court will not consider arguments or evidence raised for the first time in a reply brief . . . unless there is some legitimate reason why the argument or evidence could not have been raised earlier."  *Plant Oil Powered Diesel Fuel Systems, Inc. v. ExxonMobil Corp.*, 11-CV-0103 JB/WPL, 2012 WL 1132527, at *15 (D.N.M. Mar. 22, 2012) (quoting *City of Fairview Heights v. Orbitz, Inc.*, 05-CV-840-DRH, 2008 WL 895650, at *3 (S.D. Ill. Mar. 31, 2008) (unpublished)).  Nonetheless, because I find that the prohibition on the knowing destruction or concealment of material evidence in an effort to cover up a government official's misconduct was clearly established in May 2013, I will deny the County Defendants' qualified immunity defense to this claim even though they first raised it in their reply.

To determine whether a right was clearly established, the Court must determine whether "the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (alterations and internal quotations omitted). "Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, *or* the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Fogarty v. Gallegos*, 523 F.3d 1147, 1161 (10th Cir. 2008) (internal quotations omitted) (emphasis added). "The plaintiff is not required to show, however, that the very act in question previously was held unlawful . . . to establish an absence of qualified immunity." *Weigel v. Broad*, 544 F.3d 1143, 1153 (10th Cir. 2008) (internal quotations omitted). The degree of specificity required depends on the egregiousness of the challenged conduct; "[t]he more obviously egregious the conduct in light of prevailing constitutional principles, the less specificity is required from prior case law to clearly establish the violation." *Pierce v. Gilchrist*, 359 F.3d 1279, 1298 (10th Cir. 2004).

The Tenth Circuit has not explicitly recognized the type of denial-of-access claim that Ms. Tenorio asserts, but neither has it explicitly rejected it. *See Lynch*, 703 F.3d at 1162 (defendant officers' who refused to identify which officer used excessive force against plaintiff were entitled to qualified immunity on denial-of-access claim because scope of right was not clearly established); *Jennings*, 383 F.3d at 1207 (stating that the Tenth Circuit has not recognized a claim of denial of access to the courts for a police cover-up); *Wilson v. Meeks*, 52 F.3d 1547, 1557 (10th Cir. 1995) (stating that Tenth Circuit precedent did not clearly establish a duty to avoid a police cover-up, but not resolving the question). *But see Donohue*, 109 F. App'x at 356–57 (10th Cir. 2004) (unpublished) (stating that intentional destruction of evidence can constitute

a violation of the right of access to the courts); *Stump v. Gates*, No. 92-1134, 1993 WL 33875, at

*2–3 (10th Cir. Feb. 11, 1993) (unpublished) (holding that police department employees were

not entitled to qualified immunity on claim that "deliberate failure to investigate and quick

destruction of evidence that might have proved homicide was a violation of [plaintiffs'] right of

access to the courts").  Most other circuits have recognized the type of denial-of-access claim

Ms. Tenorio has alleged.  The Fifth, Sixth, Seventh, Eighth, and Ninth Circuits explicitly

recognize a denial of access to the courts claim similar to the one Ms. Tenorio brings here.  *See,*

*e.g., Webster v. City of Houston*, 735 F.2d 838, 845–46 (5th Cir. 1984) (police cover-up by use

of a "throwdown" gun violated victim's right of access to courts); *Swekel v. City of River Rouge*,

119 F.3d 1259, 1262 (6th Cir. 1997) ("if a party engages in actions that effectively cover-up

evidence and this action renders a plaintiff's state court remedy ineffective, they have violated

his right of access to the courts"); *Bell v. City of Milwaukee*, 746 F.2d 1205, 1261 (7th Cir. 1984)

("a conspiracy to cover up a killing, thereby obstructing legitimate efforts to vindicate the killing

through judicial redress, interferes with the due process right of access to courts"), *overruled on*

*other grounds by Russ v. Watts*, 414 F.3d 783 (7th Cir. 2005); *S.L. ex rel. Lenderman v. St. Louis*

*Metro. Police Dep't Bd. of Police Comm'rs*, 725 F.3d 843, 850–54 (8th Cir. 2013) (officers not

entitled to qualified immunity for falsification of arrest reports and misleading investigators

during internal affairs investigation in effort to deprive plaintiff of valid § 1983 claim); *Karim-*

*Panahiv. Los Angeles Police Dep't*, 839 F.2d 621, 625 (9th Cir. 1988) (allegations that officers

falsified facts and destroyed evidence and documents may state federally cognizable denial-of-

access to court claim, but claim was not ripe for adjudication).  The First, Third, and Eleventh

Circuits also have suggested that in the right circumstances, these types of claims are viable.  *See*

*Williams v. City of Boston*, 784 F.2d 430, 435 (1st Cir. 1986) ("An official cover-up may violate

section 1983 if it deprives the plaintiff of his right of access to the courts."); *Estate of Smith v. Marasco*, 318 F.3d 497, 511 (3d Cir. 2003) ("Cover-ups that prevent a person who has been wronged from vindicating his rights violate the right of access to the courts protected by the substantive due process clause."); *Chappell v. Rich*, 340 F.3d 1279, 1283 (11th Cir. 2003) ("interference with the right of court access by state agents who intentionally conceal the true facts about a crime may be actionable as a deprivation of constitutional rights under 42 U.S.C. §§ 1983 and 1985").

In her amended complaint, Ms. Tenorio alleges that the County Defendants purposefully destroyed or concealed evidence showing that County employees—individual detention officers—assaulted, battered, and falsely imprisoned her, without probable cause or any other legal justification.  *See* Doc. 128 ¶¶ 50–54, 74–79.  Taking the allegations as true, the County Defendants' conduct is egregious.  Assault, battery, and false imprisonment are all crimes under New Mexico law.  *See* N.M. STAT. ANN. §§ 30-3-1 (assault), 30-3-4 (battery), 30-4-3 (false imprisonment).  The destruction or concealment of "any physical evidence with intent to prevent the apprehension, prosecution or conviction of any person or to throw suspicion of the commission of a crime upon another" is a felony under New Mexico law.  N.M. STAT. ANN. § 33-22-5(A).  Thus, unlike the "code of silence" type cover-up at issue in *Lynch*, the County Defendants should have realized that the purposeful destruction of a video recording of several potential crimes—assault, battery, and false imprisonment—interfered with the victim's right to bring claims against the perpetrators of those crimes.  *Cf. Lynch*, 703 F.3d at 1163 (although defendant officers' code of silence was "inexcusable," that the Court is "morally outraged" does not necessarily mean that officers should have realized that their conduct violated the plaintiff's constitutional right of access).  The combined egregiousness of the conduct and the weight of

authority from other circuits establish that the County Defendants should have realized that their

conduct violated Ms. Tenorio's constitutional right to access the courts.  The County Defendants

are not entitled to qualified immunity on Ms. Tenorio's denial-of-access claim.

> 3.   *Fourth Amendment Claims*

With respect to her Fourth Amendment claims, the County Defendants argue only that

because none of them participated in the handcuffing incident, they cannot be held liable.  Doc.

152 at 10.  This, however, ignores paragraph 118 of Ms. Tenorio's amended complaint.

Paragraph 118 states:

> Prior to the acts and omissions alleged herein, Defendants failed to
> properly create, adopt, and inculcate appropriate policies and procedures for
> supervisors employed by them; failed to properly train, monitor, supervise, and
> discipline supervisors employed by them; and failed to otherwise institute
> adequate procedures and policies that would protect the rights of Ms. Tenorio.
> These acts and omissions were direct and proximate causes of the injuries
> complained of by Ms. Tenorio.

Doc. 128 ¶ 118.  Neither the County Defendants nor Ms. Tenorio distinguishes between the

individual County Defendants and the County itself.  I consequently will not endeavor to do so.

But at the very least, the Tenth Circuit has concluded that "§ 1983 allows a plaintiff to impose

liability upon a defendant-supervisor who creates, promulgates, implements, or in some other

way possesses responsibility for the continued operation of a policy the enforcement (by the

defendant-supervisor or her subordinates) of which 'subjects, or causes to be subjected' that

plaintiff 'to the deprivation of any rights . . . secured by the Constitution . . . .'" *Dodds v.*

*Richardson*, 614 F.3d 1185, 1199 (10th Cir. 2010) (quoting 42 U.S.C. § 1983).  "A plaintiff may

therefore succeed in a § 1983 suit against a defendant-supervisor by demonstrating: (1) the

defendant promulgated, created, implemented or possessed responsibility for the continued

operation of a policy that (2) caused the complained of constitutional harm, and (3) acted with

the state of mind required to establish the alleged constitutional deprivation." *Id.*

Further, in *Monell v. Department of Social Services*, 436 U.S. 658, 691–92 (1978), the Supreme Court held that a municipality can be held liable under 42 U.S.C. § 1983 if a plaintiff identifies "a government's policy or custom" that caused the plaintiff's injury. The plaintiff must "demonstrate a direct causal link between the municipal action and the deprivation of federal rights." *Board of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 404 (1997). The plaintiff also must "demonstrate that the municipal action was taken with 'deliberate indifference' as to its known or obvious consequences." *Id.* at 407.

In her amended complaint, Ms. Tenorio alleges that Warden Snedeker was responsible for the policies, practices, and customs at SMCDC, as well as the hiring, training, discipline, supervision, counseling and control of SMCDC's correctional officers, including those who were involved in the handcuffing of Ms. Tenorio. *See* Doc. 128 ¶ 4. Ms. Tenorio further alleges that Officer Snedeker and Officer Padilla investigated the handcuffing incident and found that Ms. Tenorio was partially to blame. *Id.* ¶ 67. With respect to the constitutional violations, she alleges that the County Defendants had inadequate policies and procedures in place, and inadequate training and supervision, to protect her from the constitutional violations, including the Fourth Amendment violations. *Id.* ¶ 118. And lastly, she alleges that the County Defendants acted with "callous indifference" to her rights. *Id.* ¶ 120. These allegations are sufficient, at the pleading stage, to avoid dismissal of her Fourth Amendment claims against the County Defendants, even though they did not directly participate in the handcuffing incident. *See Bryson v. City of Oklahoma City*, 627 F.3d 784, 788 (10th Cir. 2010) ("A municipal policy or custom may take the form of (1) a formal regulation or policy statement; (2) an informal custom amounting to a widespread practice that, although not authorized by written law or express

municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions—and the basis for them—of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the injuries that may be caused.") (internal citations, brackets, and quotations omitted). I deny the County Defendants' motion to dismiss Ms. Tenorio's sixth cause of action.

### D. Ms. Tenorio's Conspiracy Claim under 42 U.S.C. § 1985 (Seventh Cause of Action)

The County Defendants argue that because "§ 1985(3) does not apply to Title VII employment discrimination claims," the Court should dismiss Ms. Tenorio's seventh cause of action. Doc. 140 at 11–12. They also argue that because there has been no violation of Ms. Tenorio's civil rights, her claim that there was a conspiracy to violate her civil rights is untenable. *Id.* The individual Detention Officer Defendants argue that Ms. Tenorio's conspiracy claim fails because she has failed to allege that their conduct was motivated by "some racial, or perhaps otherwise class-based, invidious discriminatory animus." Doc. 133 at 5. They also argue that she has failed to allege any facts showing an agreement, discriminatorily motivated, among the Detention Officer Defendants to deprive Ms. Tenorio of equal protection. *Id.* Ms. Tenorio counters that she has alleged an Equal Protection claim in addition to a Title VII claim, and therefore her seventh cause of action is not dependent on her Title VII claim. *See* Doc. 149 at 20–21. She also argues that she has stated sufficient facts that the conspirators' actions were motivated by a class-based, invidiously discriminatory animus. *See* Doc. 137 at 9, Doc. 149 at 20–21. For the following reasons, I grant the motions to dismiss Ms. Tenorio's seventh cause of action.

To state a claim under § 1985(3),[6] Ms. Tenorio must allege "(1) the existence of a conspiracy (2) intended to deny [her] equal protection under the laws or equal privileges and immunities of the laws (3) resulting in an injury or deprivation of federally-protected rights, and (4) an overt act in furtherance of the object of the conspiracy." *Murray v. City of Sapulpa*, 45 F.3d 1417, 1423 (10th Cir. 1995).  She also must allege facts that make it plausible that the alleged conspirators were motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971).  And finally, Ms. Tenorio must allege facts that show the alleged conspirators intended to deprive her of a constitutional right "guaranteed against private impairment." *Bray v. Alexandria Women's Health Clinic*, 506 U.S. 263, 274–78 (1993).

---

[6] Section 1985(3) provides:

> If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3).  Ms. Tenorio does not contest the Detention Officer Defendants' contention that she is proceeding under subsection 3 of § 1985.  *See* Doc. 133 at 3–4, Doc. 137 at 4–6.

Ms. Tenorio argues that her first amended complaint alleges facts sufficient to show that the Detention Officer Defendants conspired to handcuff and assault her, and thereafter forced her out of her position, based on their discriminatory animus toward women.[7] *See* Doc. 137 at 8. She cites to paragraphs 70 and 122 in her amended complaint, but neither paragraph alleges facts that suggest that the Detention Officer Defendants were motivated to do what they did because of their animus against women in general. *See* Doc. 128 ¶¶ 70, 122. Instead, these paragraphs simply state that the defendants engaged in "discriminatory conduct" with the purpose of depriving her of equal protection. *See id.* These conclusory allegations are insufficient. *Tal v. Hogan*, 453 F.3d 1244, 1261 (10th Cir. 2006).

Ms. Tenorio's allegations against the County Defendants also are insufficient. She alleges that Warden Snedeker and Officer Padilla conspired to blame her for the handcuffing incident, and that together they agreed to destroy or conceal the video of the event, Doc. 149 at 21, but there is no factual allegation in her complaint that suggests that they did so because of their animus toward women in general. *See* Doc. 128 ¶¶ 67, 74–79. And although she alleges that Warden Snedeker and Ms. Torres subjected her to "disparate and abusive treatment," Doc. 149 at 21, there are no factual allegations in her amended complaint that they acted because of an animus toward women in general. *See* Doc. 128 ¶¶ 65, 68–83. Thus, Ms. Tenorio's seventh cause of action fails to state a claim under 42 U.S.C. § 1985(3).

---

[7] Neither the Supreme Court nor the Tenth Circuit has decided whether gender is a protected class under 42 U.S.C. § 1985(3). *See Bray*, 506 U.S. 263, 269 (1993) ("We find it unnecessary to decide whether *that* [women in general] is a qualifying class under § 1985(3)") (emphasis in original); *Yaklich v. Grand County*, 278 F. App'x 797, 802 (10th Cir. 2008) (assuming without deciding that gender is a protected class under § 1985(3)). Because I find that Ms. Tenorio has failed to allege sufficient facts to make it plausible that the alleged conspirators acted because of an animus toward women in general, it is unnecessary to decide whether gender is a qualifying class under § 1985(3).

Ms. Tenorio also argues that she has alleged sufficient facts to state a conspiracy claim under 42 U.S.C. § 1983.  However, her seventh cause of action refers only to 42 U.S.C. § 1985, not to § 1983.  Doc. 128 ¶ 122.  The seventh cause of action does not put the defendants on notice that she is alleging a conspiracy under § 1983, and the elements of the two causes of action are different.  *See Dixon v. City of Lawton*, 898 F.2d 1443, 1449 n.6 (10th Cir. 1990).  Thus, although perhaps Ms. Tenorio *could* state a claim under a § 1983 conspiracy theory, she has not done so in her seventh cause of action.

### IV. <u>Conclusion</u>

For the foregoing reasons, the Court GRANTS the Detention Officer Defendants' Motion for Dismissal of Seventh Cause of Action (Doc. 133).  The seventh cause of action as alleged against the Detention Officer Defendants in Ms. Tenorio's first amended complaint is dismissed with prejudice.

Further, the Court GRANTS in part and DENIES in part the County Defendants' Motion to Dismiss Plaintiff's First Amended Complaint, in Part, Based on Qualified Immunity (Doc. 140).  The seventh cause of action as alleged against the County Defendants in Ms. Tenorio's first amended complaint is dismissed with prejudice.  The County Defendants' motion to dismiss the first, second, fifth and sixth causes of action in the first amended complaint is DENIED.

Laura Fashing
United States Magistrate Judge