IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

ESTRELLA TENORIO,

    Plaintiff,

v.                                                                                                                          1:15-cv-00349-LF-JHR

SAN MIGUEL COUNTY DETENTION CENTER,
BOARD OF COMMISSIONERS OF SAN
MIGUEL COUNTY, WARDEN PATRICK
SNEDEKER, in his Individual and official
capacities, ANTONIO PADILLA, ELFIGO
SANDOVAL, JOEY ROMERO, and MATHEW
BORREGO, in their individual capacities,
HEALTH CARE PARTNERS FOUNDATION,
INC., and RITA TORRES, in her individual and
official capacities,

    Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on defendants San Miguel County Detention Center ("SMCDC"), Board of Commissioners of San Miguel County, SMCDC Warden Patrick Snedeker, and SMCDC Correctional Officer Antonio Padilla's (collectively "County Defendants") Renewed Motion to Dismiss Plaintiff's Spoliation Claim (Doc. 173). For the following reasons, the Court GRANTS the motion.

### I.     Relevant Facts

This case arises out of an incident that occurred in May 2013. The facts are taken from the allegations in Ms. Tenorio's first amended complaint, Doc. 128, which the Court assumes are true for the purposes of this motion. In April 2013, defendant Health Care Partners Foundation, Inc. (hereafter "Health Care Partners") and defendant Rita Torres hired Ms. Tenorio as a medical technician and assigned her to work at SMCDC under the direction and supervision of SMCDC,

Warden Snedeker, and other supervisory staff employed by defendants San Miguel County and SMCDC. Doc. 128 ¶ 23.

At approximately 9:00 p.m. on May 11 or 12, 2013, Ms. Tenorio was getting ready to leave SMCDC after finishing her shift. *Id.* ¶¶ 39–40. Before leaving, she walked into the master control room to deliver some paperwork to SMCDC Correctional Officers Matthew Borrego and Joey Romero. *Id.* ¶ 41. After entering the control room, Officers Borrego and Romero forcibly placed Ms. Tenorio in handcuffs and cuffed her to a chair. *Id.* ¶ 42. After a while, Officers Borrego and Romero removed the cuffs, but then immediately attempted to handcuff Ms. Tenorio again. *Id.* ¶ 43. Ms. Tenorio struggled, and during the course of the struggle Officers Borrego and Romero injured Ms. Tenorio—causing bruising, swelling and pain to her wrists and arms. *Id.* ¶ 44. Officers Borrego and Romero succeeded in forcibly handcuffing Ms. Tenorio again. *Id.* ¶ 45. At one point, Ms. Tenorio was handcuffed to a toilet in the master control room. *Id.* ¶ 47. After some time, one officer freed her, but then Officers Borrego and Romero attempted to handcuff her again. *Id.* ¶ 48. At some point, SMCDC Correctional Officer Elfigo Sandoval and another officer entered the master control room, and Officer Sandoval joined in the attempt to handcuff Ms. Tenorio. *Id.* ¶¶ 46, 48. Officer Sandoval succeeded in placing Ms. Tenorio in handcuffs again, and Officers Sandoval, Borrego and Romero again cuffed her to a chair. *Id.* ¶ 48. While Ms. Tenorio was cuffed to the chair, she attempted to escape by scooting herself and the chair through the door into the hallway. *Id.* ¶ 50. Officer Borrego, Romero, or Sandoval forcibly pulled her back into the master control room. *Id.* ¶ 51. After several cuffings and struggles, Officers Borrego, Romero, and Sandoval finally set Ms. Tenorio free, and she left SMCDC. *Id.* ¶ 55.

By scooting into the hallway, Ms. Tenorio not only was attempting to escape but also was hoping she would be seen on the video surveillance cameras that panned that area. *Id.* ¶ 52. San Miguel County's internal investigative report states that Officer Sandoval claimed "that as he walked in [to the hallway] he saw Medical Tenorio cuffed to a chair and asked her to go back into master control and asked Officer Borrego to uncuff her." *Id.* ¶ 53. But SMCDC officials, including Warden Snedeker, now claim that there is no video recording of Ms. Tenorio in the hallway. *Id.* ¶ 54.

The incident was brought to the attention of Ms. Torres and Warden Snedeker, and a supervisor or supervisors questioned Ms. Tenorio on June 6, 2013 about the incident. *Id.* ¶ 56. Although she was afraid to report what had happened, she did so. *Id.* ¶ 57. After learning of the incident, defendants San Miguel County, SMCDC, Warden Snedeker, and Health Care Partners retaliated against Ms. Tenorio for her testimony concerning the incident and engaged in a coordinated effort to blame her for what happened. *Id.* ¶¶ 58–59. Before the incident was reported, Health Care Partners regularly scheduled Ms. Tenorio to work at SMCDC, which was close to her residence. *Id.* ¶ 60. About one month after the incident was reported, Ms. Tenorio learned that she no longer would be scheduled to work at SMCDC. *Id.* ¶ 61. Ms. Torres informed Ms. Tenorio that she would be assigned to "travel" for Health Care Partners, and would work in a facility in Trinidad, Colorado, which was a two-hour drive from Ms. Tenorio's home in Las Vegas, New Mexico. *Id.* ¶¶ 62–63.

Ms. Tenorio attempted to get copies of documents related to the incident and the reporting of the incident, but Warden Snedeker and Ms. Torres refused to provide her copies of the documents she requested. *Id.* ¶ 64. Ms. Tenorio became aware that SMCDC personnel were engaging in disparaging communications about her, attacking her character, and blaming her for

3

what happened. *Id.* ¶ 66. Most of the people with whom she worked at SMCDC began to ignore or shun her. *Id.* Warden Snedeker and Officer Padilla investigated the incident and concluded that Ms. Tenorio was complicit in and encouraged the abusive handcuffing and restraint, which partially excused the actions of Officers Borrego, Romero and Sandoval. *Id.* ¶ 67. Ms. Tenorio's working relationship with SMCDC and Health Care Partners became intolerable. *Id.* ¶ 65. Given Ms. Torres's and Warden Snedeker's treatment of her, the lengthy commute to Trinidad, and the general ongoing discrimination and harassment, Ms. Tenorio had no choice but to leave her employment at SMCDC and Health Care Partners. *Id.* ¶ 68. Ms. Tenorio was constructively terminated from SMCDC and Health Care Partners on July 22, 2013. *Id.* ¶ 69.

On September 25, 2013, Ms. Tenorio, through counsel, sent a preservation letter to Warden Snedeker and SMCDC that specifically requested preservation of "San Miguel County Detention Center Surveillance Footage of May 12, 2013 of the hallway and entrance to the Master Control Room from approximately 6:00 p.m. to midnight." *Id.* ¶ 74. SMCDC and Warden Snedeker responded on September 30, 2013 that "[t]here is no surveillance video recording documentation. Facility recording equipment has a storage preservation capacity of one and a half months (six (6) weeks)." *Id.* ¶ 75. Ms. Tenorio believes that Warden Snedeker and Officer Padilla viewed this video during their investigation of the handcuffing of Ms. Tenorio, but that someone either destroyed the video or simply refused to provide it to Ms. Tenorio or her counsel. *Id.* ¶ 76. Alternatively, Ms. Tenorio believes that the video is in the defendants' possession but because the preservation letter mistakenly referred to May 12, 2013, and the incident actually occurred on May 11, 2013, defendants responded that video from May 12, 2013 did not exist. *Id.* ¶ 78. Because the handcuffing incident was reported on or about June 6, 2013—less than four weeks after the incident and well within the preservation capacity of the

recording equipment—the defendants should have been on notice that they should preserve the video. *Id.* ¶ 77.

## II. Ms. Tenorio's Spoliation Claim and the County Defendants' Motion to Dismiss

In her fourth cause of action, Ms. Tenorio alleges that Ms. Torres, Health Care Partners,[1] Warden Snedeker, SMCDC, and San Miguel County intentionally destroyed, failed to preserve, or withheld the surveillance video of part of the handcuffing incident, knowing that the incident potentially would result in a lawsuit. *Id.* ¶¶ 97–105. The County Defendants argue that Ms. Tenorio's claim is barred by the doctrine of sovereign immunity. Doc. 173. Specifically, they argue that the state has not waived immunity for the tort of spoliation under the New Mexico Tort Claims Act (NMTCA). *Id.* at 4. Ms. Tenorio argues that although there is no specific waiver of immunity under the NMTCA for the tort of spoliation of evidence, there is a waiver of immunity for the "deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico when caused by law enforcement officers while acting within the scope of their duties." N.M. STAT. ANN. § 41-4-12; Doc. 176 at 9. She further argues that because the spoliation of evidence in this case deprived Ms. Tenorio of her constitutional right to access the courts, the County Defendants are not immune from liability. *See* Doc. 176 at 6–10. Because Ms. Tenorio's constitutional claim and her spoliation claim are distinct causes of action, and because the state has not specifically waived immunity on the spoliation claim, the Court will grant the County Defendants' motion to dismiss the spoliation claim.

---

[1] It is the Court's understanding that Ms. Tenorio, Ms. Torres, and Health Care Partners have reached a negotiated settlement in this case. This order only addresses Ms. Tenorio's spoliation claim with respect to the County Defendants.

5

**III.    Discussion**

In New Mexico, the tort of spoliation of evidence is defined as "the intentional destruction, mutilation, or significant alteration of potential evidence for the purpose of defeating another person's recovery in a civil action." *Coleman v. Eddy Potash, Inc.*, 1995-NMSC-063, ¶ 13, 120 N.M. 645, 905 P.2d 185, *overruled on other grounds*, *Delgado v. Phelps Dodge Chino, Inc.*, 2001-NMSC-034, 131 N.M. 272, 34 P.2d 1148.  To state a claim for spoliation, a plaintiff must allege:

> (1) the existence of a potential lawsuit; (2) the defendant's knowledge of the potential lawsuit; (3) the destruction, mutilation, or significant alteration of potential evidence; (4) intent on [the] part of the defendant to disrupt or defeat the lawsuit; (5) a causal relationship between the act of spoliation and the inability to prove the lawsuit; and (6) damages.

*Id.*  The County Defendants argue that Ms. Tenorio's claim for spoliation is barred by the doctrine of sovereign immunity as provided for in the NMTCA.[2]  Doc. 173 at 3–5.

The NMTCA was enacted to "compensate those injured by the negligence of public employees and to impose duties of reasonable care," while at the same time limiting "governmental liability so that [the] 'government should not have the duty to do everything that might be done.'"  *Cobos v. Doña Ana Cnty. Hous. Auth.*, 1998-NMSC-049, ¶ 6, 126 N.M. 418, 970 P.2d 1143.  The NMTCA balances these two important public policies by granting governmental entities and public employees general immunity from tort liability, but waiving that liability in specific defined circumstances.  *Id.*  If no specific waiver can be found in the

---

[2] The County Defendants also argue in their reply that "even if § 41-4-12 waived immunity for spoliation claims against law enforcement officers, . . . the claim against Warden Snede[]ker would still fail because he is not a 'law enforcement officer' within the meaning of § 41-4-3(D) of the Tort Claims Act."  Doc 182 at 3.  The Court will not address this argument as it was raised for the first time in the County Defendants' reply brief.  *See Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1164 (10th Cir. 1998) ("[W]hen a moving party advances in a reply new reasons and evidence in support of its motion for summary judgment, the nonmoving party should be granted an opportunity to respond.").

NMTCA, a plaintiff's complaint against a public employee or a governmental entity must be dismissed. *Begay v. State*, 1985-NMCA-117, ¶ 10, 104 N.M. 483, 723 P.2d 252, *rev'd on other grounds sub nom. Smialek v. Begay*, 1986-NMSC-049, 104 N.M. 375, 721 P.2d 1306; *Williams v. Bd. of Regents of Univ. of N.M.*, 20 F. Supp. 3d 1177, 1186 (D.N.M. 2017).

Ms. Tenorio argues that the State waived its immunity under § 41-4-12 of the NMTCA. Doc. 176 at 9–10. Section 41-4-12 provides as follows:

> The immunity granted pursuant to Subsection A of Section 41-4-4 NMSA 1978 does not apply to liability for personal injury, bodily injury, wrongful death or property damage resulting from assault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, defamation of character, violation of property rights or deprivation of any rights, privileges or immunities secured by the constitution and laws of the United States or New Mexico when caused by law enforcement officers while acting within the scope of their duties.

N.M. STAT. ANN. § 41-4-12. As explained by the New Mexico Supreme Court, the NMTCA "waives immunity for three types of claims: (1) the commission of an enumerated common-law tort; (2) the deprivation of a statutory right; and (3) the deprivation of a constitutional right." *Weinstein v. City of Santa Fe ex rel. Santa Fe Police Dep't*, 1996-NMSC-021, ¶ 20, 121 N.M. 646, 916 P.2d 1313. Ms. Tenorio acknowledges that her spoliation claim does not fall within the list of enumerated common-law torts. Doc. 176 at 9. She also makes no claim that she was deprived of a statutory right. *See generally* Doc. 176. And, although she claims that the spoliation of evidence here also constituted the deprivation of a constitutional right, the deprivation of a constitutional right is not a necessary element of her spoliation claim. *See Coleman*, 1995-NMSC-063, ¶ 13, 120 N.M. 645, 905 P.2d 185 (listing elements of spoliation claim); *see also Wells v. Valencia County*, 1982-NMSC-048, ¶7, 98 N.M. 3, 644 P.2d 517 ("[A]lthough a Section 1983 action can grow out of tortious conduct, the two are distinct concepts compensable under different laws. Tortious conduct which does not amount to a

7

constitutional violation does not state a cause of action under Section 1983, but may be fully compensable under a state remedy for a tortious loss."). Because Ms. Tenorio's spoliation claim is a common-law tort claim that does not fall within the list of enumerated claims for which sovereign immunity has been waived, her claim is barred.[3] *See, e.g.*, *Smith v. City of Roswell*, 15cv1004 KG/KRS, 2017 WL 3172726, *15–*16 (D.N.M. May 25, 2017) (unpublished) (spoliation of evidence claim was barred by the doctrine of sovereign immunity); *Sean E. v. Fraga*, 07cv1191 RB/KBM, 2008 WL 8937906, *9–*10 (D.N.M. Oct. 30, 2008) (unpublished) (same).

**IV.    Conclusion**

For the foregoing reasons, the Court GRANTS the County Defendants' Renewed Motion to Dismiss Plaintiff's Spoliation Claim (Doc. 173). The fourth cause of action as alleged against the County Defendants in Ms. Tenorio's first amended complaint is dismissed with prejudice.

_____
Laura Fashing
United States Magistrate Judge

---

[3] This opinion does not affect Ms. Tenorio's claim in her sixth cause of action that the destruction of the video violated her constitutional rights by denying her access to the courts. Thus, although Ms. Tenorio argues at length that the federal cases on which the County Defendants rely are distinguishable because none addressed a spoliation of evidence claim that also formed the basis of a constitutional violation, *see* Doc. 176 at 7–9, the point here is that the constitutional claim is distinct from the tort claim. The tort claim is barred under the NMTCA and the doctrine of sovereign immunity.